Yolanda JACKSON, Plaintiff,

v.

SARA LEE BAKERY GROUP,
Defendant.

No. 2:07–CV–1238–PWG.

United States District Court,
N.D. Alabama,
Southern Division.

Dec. 16, 2009.

Alicia K. Haynes, Haynes & Haynes PC, Birmingham, AL, for Plaintiff.

Amy K. Jordan, John J. Coleman, III, Burr & Forman LLP, Birmingham, AL, for Defendant.

## *ORDER*

PAUL W. GREENE, United States Chief Magistrate Judge.

Defendant Sara Lee Bakery ("SL") has filed a Motion to Strike Inadmissible Evidence relied upon by Plaintiff in Response to Defendant's Motion for Summary Judgment. (Doc. # 52). Plaintiff filed a response in opposition to the motion. (Doc.

# 55). Defendant filed a reply. (Doc. # 56). The matter is before the undersigned magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b); Rule 72 of the *Federal Rules of Civil Procedure;* LR 72; and the General Orders of Reference dated July 25, 1996, May 8, 1998, as amended July 27, 2000.

SL declares that Rule 56(e) of the Federal Rules of Civil Procedure ("F.R.Civ. P.") precludes "three types of inadmissible evidence [offered by Jackson] in opposition to Sara Lee's motion for summary judgment: (1) hearsay concerning Plaintiff's employment at Sara Lee and the alleged reasons for her discharge; (2) irrelevant evidence concerning race, sex, or disability determination or harassment and reasons why Plaintiff is no longer employed at Sara Lee; (3) evidence which contradicts prior sworn testimony; (4) evidence which contains inadmissible conclusory allegations; and (5) evidence which is inadmissible under the Best Evidence Rule." (Doc. # 52).

1. **Hearsay.** Defendant's assertion that plaintiff cannot use statements concerning her employment and discharge that are offered to prove the truth of the matter asserted, for which there is no exception. (Doc. # 52 at 2–9).

 a. Yolanda Jackson's deposition statement that during a conversation with James Tolliver in which he expressed sympathy for the type of treatment she was experiencing, and then stated, "I can assure you this is not the usual climate." (*Id.* at 4)(quoting Jackson depo at 1).

■ Jackson responds that even if the court were to determine Tolliver's statements were hearsay, "James Tolliver is a regional vice-president of SL in the Atlanta area ... and [a]s such, statements by Tolliver ... would be admissions by a party opponent," an exception to the hearsay rule. (Doc. # 55 at 2)(citing [Federal Rules of Evidence] FRE 801(d)(2)). Moreover, the "evidence is admissible to prove motive and intent to discriminate against Jackson and to disprove Defendant's articulated non-discriminatory reasons" that plaintiff's job was eliminated due to a reduction in force. (*Id.*).

Defendant argues the issue is not whether Tolliver is a party opponent, but that plaintiff did not establish that Tolliver, as a regional vice president in Atlanta, could be a speaking agent on this particular topic because he was not a decision-maker in the matter. (Doc. # 56 at 2–3). Moreover, SL contends there is no statement in the Jackson/Tolliver exchange showing that any decision-maker intended to or was motivated by discrimination as Jackson *"never told Tolliver she was being treated more harshly based on a protected status."* (*Id.*)(emphasis by defendant).

Defendant's motion to strike is GRANTED to the extent that Jackson and Tolliver conversed with one another about Daudelin's behavior. Neither Tolliver nor Daudelin were the decision-makers with regard to the elimination of plaintiff's job. Further, as a ZVP in Atlanta, Georgia, Tolliver had no supervisory authority over any personnel issues that occurred in the NANM zone.

 b. Jeff Givens's deposition statement that he did not know why Jackson was no longer at SL other than hearing "she was sick" through Tom Daudelin when Daudelin told Givens "she ... left the company due to her cancer." (Doc. # 52 at 4–5)(quoting Givens depo. at 19).

■ Jackson counters that defense counsel did not cross-examine Givens about this statement and therefore it is unrebutted. (Doc. # 55 at 2). Further,

Givens is a "manager at SL and is the Zone Business Manager (ZBM) replacing the Plaintiff." (*Id.*). From this platform, she argues that "Givens' testimony are admissions by a party opponent and these unrebutted admissions go directly to the issue in dispute, to prove the defendant was motivated by impermissible discriminatory and retaliatory intent when it terminated Plaintiff's employment and refused to transfer or rehire the Plaintiff, unlike the treatment provided to males without cancer." (*Id.*) (citing [Federal Rules of Evidence] FRE 801(d)(2)). Further the statements are admissible for the purpose of showing Daudelin's prior inconsistent statement [under F.R.E. 613] ... and to impeach "Daudelin's statement that he did not discriminate nor comment about Jackson's health." (*Id.*)(citing Daudelin depo at 232,233).

Defendant argues that the issue is not whether Givens is a party opponent, but that Jackson has not shown that Givens was a speaking agent "regarding non-decision maker Daudelin's statements." (Doc. # 56 at 2–3). SL also declares that because Daudelin was not a decision-maker Jackson "mischaracterizes" the testimony as proving discriminatory and retaliatory intent. (*Id.* at 3–4). SL alleges it was under no obligation to cross-examine Givens during his deposition, and asserts Givens's testimony cannot be used to show that Daudelin made a prior inconsistent statement. (*Id.* at 5). Even if he did, the statement is irrelevant because Daudelin was not a decision-maker, was not privy to the reasons behind Jackson's termination, and there is no basis upon which to conclude that he could serve as a speaking agent even if he knew. (*Id.*) (citing Daudelin Aff. ¶¶ 9.b.(2) and (3);Givens Aff.) (¶ 6.a.).

Daudelin may not have been a decision-maker in the elimination of Jackson's position. However, he was a decision maker with regard to whether to hire Jackson for the open administrative position at the time of her termination. Defendant's motion is DENIED, but only to the extent Daudelin was not a decision-maker in the elimination of Jackson's position and to the extent that Jackson declares Daudelin discriminated against or engaged in outrageous conduct against her on the basis of her medical condition.

**c.** Yolanda Jackson's deposition statement that Tom Daudelin said "I should just go and get myself well and just concentrate on that for now." (Doc. # 52 at 5) (quoting Jackson depo. at 56).

Jackson argues that Daudelin's comment falls within an "exception to the hearsay rule as an admission by a party opponent under FRE 801(d)(2)". (Doc. # 55 at 3). Defendant does not deny that Daudelin is a party opponent, but asserts that plaintiff failed to establish that Daudelin was a speaking agent. (Doc. # 56 at 6).

Defendant's motion is DENIED, but only to the extent Daudelin was not a decision-maker in the elimination of Jackson's position and to the extent that Jackson declares Daudelin discriminated against or engaged in outrageous conduct against her on the basis of her medical condition.

**d.** Bobby Snyder's deposition statements regarding questions about an email sent to him by James Tolliver, a ZVP in Georgia, in which Tolliver expressed that Jackson was qualified for the Alabama ZBM position and could be groomed for a ZVP position. (Doc. # 52 at 5–6)(quoting Snyder depo. at 246–248).

Defendant alleges there is no hearsay exception that allows plaintiff to

rely on either Bobby Snyder's testimony or Tolliver's email statements to prove that "she was qualified for the ZBM and Z[V]P roles." (*Id.* at 5–6)(citing ¶ 60 of Jackson's Undisputed Facts). (Doc. # 52 at 5–6). SL also contends that Jackson did not establish the Snyder was a speaking agent, and that the statement and email is "irrelevant." (Doc. # 56 at 6).

Jackson argues this managerial email trail is information used by SL at the time "she was hired." (Doc. # 55 at 3). To her, "[t]his evidence is not hearsay under FRE 801(d)(2) as these statements are Sara Lee's own statement in either an individual or representative capacity and statements by Sara Lee's own agent concerning a matter within the scope of employment." (*Id.*)(citing FRE 801(d)(2)(A) and (D)).

Defendant's motion is due to be GRANTED in PART and DENIED in PART. Defendant's motion to strike is DENIED to the extent that the Tolliver email may be proffered to show that Jackson may be qualified for the NANM zone ZBM position as it was set to exist before her September 2004 employment at SL. Defendant's motion GRANTED to the extent that neither the email or testimony surrounding it can be admissible evidence in support of Jackson's assertion that she efficiently performed her duties while employed at SL. It is equally immaterial and irrelevant to show that Jackson was qualified for the ZBM positions held by Jeff Givens or Richard Pigg held either with regard to performance of the financial aspects of her ZBM duties. Nor is it admissible to show that she was qualified with regard to the sales and operational duties perform by Givens and Pigg as part of their ZBM positions—duties which she undisputedly has almost no experience and which were not part of her duties when she was the NANM zone ZBM.

e. Angela McKinnis's deposition statement "regarding Rodney Strickland and Helen Hall, referenced in paragraphs 69–70 of her Undisputed Facts." (Doc. # 52 at 6–7) (quoting McKinnis depo. at 156–157 & Pl. Ex. 5).

■ Plaintiff counters that McKinnis is a SL human resource manager. (Doc. # 55 at 3–4). She argues the managerial email trail and testimony fall within two exceptions to the hearsay rule. (*Id.*). First, both "depict[ ] the motive and intent of SL to discriminate on the basis of Plaintiff's disability because she was a high risk on insurance." (*Id.*)(citing McKinnis depo at 157; Plaintiff Ex. 50; and FRE 404(b)). Second, the document itself falls within the business records exception to the hearsay rule. (*Id.*)(citing FRE 803(6)).

On the other hand, defendant argues McKinnis's testimony simply shows that she did not see an email between HR generalist Helen Hall, Jackson and Tom Daudelin, in which Hall made a comment about a rehired employee (Rodney Strickland) being a high risk on insurance, which precipitated a response by Tom Daudelin that Strickland was being brought back as a part time employee and for Ms. Hall to keep her opinions to herself. (Doc. # 52 at 6–7; McKinnis depo. at 156–157 & Pl. Ex. 5). Ms. McKinnis also denied that anyone at Sara Lee had ever "talk[ed] about Ms. Jackson being a high risk on insurance because of her cancer." (*Id.*).

From an evidentiary standpoint, defendant contends there is no hearsay exception that would allow Jackson to use Ms. "McKinnis's portrayal of comments made by other Sara Lee employees" as evidence. (Doc. # 56 at 6). In short, SL declares the statements are inadmissible because "they are offered for the truth of what they say—to show that someone who was not a

decision-maker said someone else who was not a decision-maker talked about another employee (not Plaintiff) being a high risk on insurance." (Doc. # 56 at 6–7)(emphasis omitted). Further, counsel's questions are not testimony and the witness "denied ever hearing such a discussion." (*Id.* at 7). Finally, defendant argues the business records exception to the hearsay rule has not been satisfied because it was not "supported by the testimony of custodian," and even if it was, the exception "does not cure" hearsay in content of the email. (*Id.*).

Defendant's motion to strike McKinnis's testimony is GRANTED. McKinnis has no personal knowledge of the email. Even if the email can be substantiated by the custodian of records, the email has nothing to do with Jackson, and the individual who made the comment was not a decision-maker in connection with any aspect of Jackson's employment. Further, this is the only evidence Jackson presents that could be interpreted to points to some type of ongoing practice by SL to avoid employing those who were high risk for insurance purposes. This example, standing alone, is insufficient as a matter of law to support such a theory.

 f. Bobby Snyder's deposition statement acknowledging the content of email trail in which Daudelin expressed to Jackson and Helen Hall that Rodney Strickland "was only being brought back as a part-time person." (Doc. # 52 at 8) (quoting Snyder depo at 395).

Plaintiff asserts that since Bobby Snyder has been designated SL's corporate representative, the managerial email trail and Snyder's testimony fall within three exceptions to the hearsay rules: namely, the testimony and email show intent and motive to discriminate (FRE 404(b)), the document is a business record (FRE 803(6)), and that prior statements of SL (FRE 613) are admissible. (*Id.*)

Defendant argues that ¶ 71 of Plaintiff's Undisputed Facts improperly asserts that Snyder testified "that Daudelin claimed Strickland was only brought back as a part-time employee," because Snyder was simply answering whether he had visually located the portion of email to which counsel was referring. (Doc. 52 at 8; Snyder depo at 395). Further, "testimony in a deposition" is not within the business records exception. (Doc. 56 at 8). Defendant also declares that plaintiff has not explained "how the statement proves motive and intent of any decision-maker respecting any material issue" ... and that " Plaintiff has not show that the statement is inconsistent with any prior statement of an agent or officer of a decision-maker of Sara Lee." (*Id.*).

Defendant's motion to strike Snyder's testimony is GRANTED. Snyder has no personal knowledge of the email. Even if the email can be substantiated by the custodian of records, the email has nothing to do with Jackson, and the individual who made the comment was not a decision-maker in connection with any aspect of Jackson's employment. Further, this is the only evidence Jackson presents that could be interpreted to points to some type of ongoing practice by SL to avoid employing those who were high risk for insurance purposes. This example, standing alone, is insufficient as a matter of law to support such a theory.

 2. *Irrelevant.* Evidence that is irrelevant pursuant to the Federal Rules of Evidence. (Doc. # 52 at 9–15) (citing Fed. R. Ev. 401, 402 and 403).

 a. **Testimony Regarding Discrimination and Harassment by Tom Daudelin.**

Defendant alleges Jackson's testimony regarding discrimination based on "race,

sex, or disability" as to Tom Daudelin are irrelevant for two reasons. (Doc. # 52 at 9). First, SL contends that to others Jackson did not complain about race, sex or disability—she only complained that Daudelin was "generally unfriendly." (Doc. # 52 at 9–10)(citing Jackson depo excerpts at 116, 119, 120–121, 123, 126, 132–135, 138, 142–143, 145, 152–153, and 158–159). Second, SL asserts Jackson did not "testify that acts of discrimination took place in such a manner that Sara Lee would have been on notice of the conduct." (*Id.*).

Jackson counters that the deposition excerpts "regarding her complaints to Cyndy Donato, David Catlett and Bobby Snyder" are

> relevant evidence that is of consequence to the determination of this action in specifically disproving that the defendant was never on notice of Plaintiff's complaints of discrimination, harassment, and unfair treatment in the workplace. This evidence also disapproves [ (sic) ] the Defendant's affirmative defenses and its nondiscriminatory reasons for terminating the Plaintiff.

(Doc. # 55 at 5)(citing FRE 401 and 402). In doing so, she specifically cites ¶¶ 9–10 of her opposition brief. (*See* Doc. 45 at 9). In these paragraphs, plaintiff complains that white male Jeff Givens assumed the ZBM position she had previously occupied, and that Givens had not been told the position had been eliminated by the IO conversion, but he was told by Daudelin that she left SL because of cancer. (*Id.*) (quotations and citations to Givens depo omitted). Moreover, Givens did not initially apply for the ZBM position because he was concerned about his lack of a college degree and the financial duties associated with the position. (*Id.*).

It is apparent that defendant's motion to strike is restricted to the content of the verbal complaints Jackson made about Daudelin's behavior to supervisory officials in December 2004 and January 2005, and the admissibility of those facts to support her federal claims. Jackson's response also reveals that she believes the same complaints are relevant to her Title VII/1981 and retaliation claims pertaining to the February 3, 2006, elimination of her position and the failure to rehire her for a post-conversion Alabama ZBM position in December 2006.

It is undisputed that Daudelin was not a decision-maker regarding the elimination of Jackson's ZBM position during the conversion process. Therefore, any comments made by Daudelin to Givens are immaterial and irrelevant. Further, ZVP Mitch Cox hired Jeff Givens for a new and different ZBM position in Alabama in December 2006, one which he determined was necessary to create in late Fall 2006. Unlike the ZBM Jackson held, the post-conversion ZBM position Jeff Givens was offered was 50% sales and 50% financial. Jackson had no sales experience and limited financial experience. There were no HR duties associated with the 2006 Alabama ZBM position because there were virtually no employees left in the NANM zone.

As set out in this court's report and recommendation, which is being entered contemporaneously herewith, plaintiff has abandoned many of her federal claims. For this reason, the reasons set out in the previous paragraph, which were made within the limits of the defendant's motion to strike and plaintiff's response thereto, the defendant's motion to strike is GRANTED.

**(b)(I). Plaintiff's Testimony That She Reported Daudelin's Conduct to James Tolliver.**

Defendant alleges Jackson's "testimony that she reported Daudelin's conduct to

James Tolliver," is irrelevant because it is undisputed that Tolliver was not a decision-maker. (Doc.# 52 at 10–11)(quoting Jackson depo at 173–174, wherein Jackson testified that Tolliver was a zone vice president in Georgia and had no supervisory authority in her zone.)

For reasons already set out, the defendant's motion to strike is GRANTED.

■ **(b)(ii)** Defendant alleges Jackson's "testimony that she applied for 17–20 positions at Sara Lee after her position was eliminated is irrelevant because she was not qualified to perform any of them." (Doc. # 52 at 11–12) (supporting citations to evidence pertaining to alleged lack of qualification omitted).

Defendant's motion to strike is DENIED. It is within this court's purview to decide whether plaintiff has presented sufficient evidence to show that she was qualified for the positions, and it will do so as part of its summary judgment report and recommendation.

**(b)(iii) Plaintiff's testimony Regarding Tom Daudelin's Statements to Her.**

Defendant alleges Jackson's testimony that "Daudelin told her to go home and get well" when she asked about an open administrative position, is irrelevant because it is undisputed that Daudelin was not a decision-maker. (Doc. # 52 at 12) (quoting Jackson depo at 54, 217–218).

Defendant's motion to strike is GRANTED, in that the statement may not be proffered in support of Jackson's Title VII/1981, FLA. retaliation, and ADA claims with the underlying theory being reduction in force. Defendant's motion to strike is DENIED to the extent the statement may be proffered in support of the foregoing federal claims and her failure to rehire theory.

**(b)(iv) Plaintiff's statement regarding her ability to have children.**

[7] Defendant alleges Jackson's testimony that she has been advised not to have children is "[ir]relevant to her claims of harassment and discrimination." (Doc. # 52 at 12) (quoting Jackson depo at 232). Defendant's motion to strike is GRANTED. Jackson has never claimed any SL was aware she could not have children and in any event her inability to do so is not a substantial impairment to the major life activity of working, which is the theory underlying her ADA claim.

**(c) Givens' Testimony Regarding Why Plaintiff Left Sara Lee**

Defendant alleges Givens' testimony that Daudelin told him Jackson left SL because of cancer is irrelevant because it is undisputed that "neither Givens nor Daudelin were decision-makers in the relevant respect." (Doc. # 52 at 13) (quoting Givens depo. at 19).

Defendant's motion to strike is DENIED as it fails to identify what "relevant respect" is at issue.

**(d) All Statements and Testimony Regarding Givens Assuming Plaintiff's Former Job**

Defendant alleges that all statements and testimony to the effect that Jeff Givens " '[replace]' " her as ZBM of the Birmingham office are irrelevant because "Givens" duties and responsibilities were not at all similar to Plaintiff's during the time in which she was employed by Sara Lee. (Doc. # 52 at 14)(quoting ¶ 91 of Plaintiff's Undisputed Facts); (citing Cox aff at ¶ 6.e; Million aff ¶ 6.e., f., g.). For the reasons set out in 2A of this Order, defendant's motion to strike is GRANTED.

**(e) Statements Regarding An Investigation of Daudelin Due to the Complaints of a White Male.**

Defendant alleges that plaintiff's assertion "that an investigation of Daudelin was undertaken after a white male complained that Daudelin cussed him out" is "not supported by the deposition excerpts cited by Plaintiff." (Doc. # 52 at 14). Even if they were, the testimony is inadmissible hearsay because "they are offered to prove the matter asserted—namely, that Daudelin was investigated for using inappropriate language towards a white employee." (*Id.* at 14–15). Finally, the testimony is irrelevant "because the allegations and evidence show that the incident in question occurred in public, in front of customers, and was not the result of generalized complaints such as Plaintiff's complaints to Snyder and Catlett." (*Id.* at 15).

Defendant's motion to strike is GRANTED with regard to the federal claims addressed in the report and recommendation entered contemporaneously herewith. Defendant's motion to strike is DENIED to the extent plaintiff might offer the evidence in support of her state law claims.

**3. *Contradictory.***

■ Defendant asserts Jackson's has made allegations and statements that are contradictory to prior her deposition testimony. (Doc. # 52 at 15–29). Jackson asserts that defendants arguments are "untrue" and that SL "has chosen to pick and chose sentence fragments to dispute Plaintiff's testimony." (Doc. # 55 at 8). Jackson also declares that her subsequent affidavit is not contradictory in that it "has

explained more fully her deposition answers and has rebutted affidavit testimony of Defendant's witnesses that followed these same witnesses' deposition testimony." (Doc. # 55 at 8–9).

**a.** Defendant is correct that Jackson's assertions that "Daudelin required her to lift bread crates despite her lifting restrictions" are clearly contradictory to "prior sworn testimony that the route sales persons did the lifting for her." (Doc. # 52 at 15–16). Accordingly, SL's motion to strike is GRANTED.[1]

**b.** Defendant is also correct that Jackson's contention that "Daudelin diminished her job duties to 'menial tasks' during the time she took her first and second short term leave is contradictory to her deposition testimony." (Doc. # 52 at 17–18). Accordingly, SL's motion to strike is GRANTED.[2]

**c.** Defendant next declares that Jackson testified that she unaware of "the exact number of hours" she worked from September 20, 2004 to the date of her first leave in February 2005, yet she states in a contradictory affidavit that "a normal workday for her consisted of 12 to 14 hours of work." (Doc. # 52 at 18–19). Defendant's motion is DENIED. During her deposition, plaintiff was not asked the average number of hours she worked per day before taking her first short term leave of absence. Plaintiff attests that she worked 12–14 hours day prior to her first short term leave of absence. The deposition testimony defendant points to is plaintiff's testimony that she was restricted to working 8–10 hour days after she returned

---

**1.** It is noted in the report and recommendation that Jackson testified that she was required to ride a delivery route on, but was not required to lift bread crates in so doing.

**2.** In the report and recommendation entered contemporaneously herewith, the court has noted that, pursuant to Jackson's EEC complaint, this diminishing of tasks may have actually occurred when plaintiff returned to work on February 1, 2005, after her second leave of absence.

to work from that short term leave of absence.

**d.** Defendant contends that plaintiff's assertion that Daudelin often excluded her from emails and key information is contrary to her "deposition [testimony which] reveals she was only excluded from one conference call and she did not of any facts which suggest she was intentionally left off emails." (Doc. # 52 at 19–20). Defendant's request is DENIED. During her deposition, plaintiff testified that she was left off numerous emails pertaining to the implementation of the IO conversion that she thought she should have received[3], and was disgruntled because Richard Pigg was allowed to assist with the conversion.

**e.** Defendant's motion to strike plaintiff's assertion that Daudelin had frequent outbursts in front of others is due to be stricken because her deposition testimony reflected only one outburst is DENIED. (Doc. # 52 at 20–21). In addition to the incident pointed out by defendant, plaintiff also testified that Daudelin spoke over her during weekly meetings and tossed papers around.

**f.** Defendant's motion to strike plaintiff's affidavit as contradictory to the extent that she states she was told to give her phone and charger is not inconsistent with her deposition testimony. (Doc. # 52 at 21–22). However, it is noted that Jackson also testified during the deposition that Daudelin gave her phone and charger back to her when she came back to work. Defendant's motion to strike is DENIED.

**g.** Defendant's motion to strike plaintiff's affidavit as contradictory to her deposition testimony, to the extent she alleges she complained to Donato about discriminatory and adverse treatment is DE-

NIED. (Doc. # 52 at 22–23). Jackson discussed her ongoing cancer treatment, her belief that she needed accommodations and Daudelin's abrupt attitude with Donato do not reveal contradictions. The evidence might be weak to support such a conclusion, but it is not contradictory.

**h.** Defendant asserts Jackson's affidavit is contradictory to the extent she asserts that she was denied work scheduling adjustments to accommodate the side effects she was experiencing and instead Daudelin suggested that she take short-term disability leave is not contradictory to her deposition testimony that she "thought it would be a good idea." (Doc. # 52 at 23–24). Defendant's motion to strike is DENIED.

**I.** Defendant's motion to strike portions of Jackson's affidavit as contradictory concerning August 9, 2005, the day Heather King initially informed Jackson she could not return to work but later in the day, after speaking with Snyder, did recall Jackson to work is DENIED. (Doc. # 52 at 24–25). There has never been a dispute, nor has plaintiff ever alleged, that this event did not occur on the same day.

**j.** Defendant's motion to strike plaintiff's attestation that her job elimination on February 3, 2006, came "without notice" is due to be GRANTED as her deposition testimony made clear that she was aware as early as Fall 2005 that her position could be restructured or possibly eliminated. (Doc. # 52 at 25).

**k.** and i. Defendant's motion to strike as contradictory portions of Jackson's affidavit where she states she performed the same duties as ZBM Givens and Pigg is due to be DENIED to the extent that Jackson performed financial duties Givens

---

**3.** Whether or not she actually should have been included in the email process is another matter entirely.

and Pigg also performed, but GRANTED to the extent that Jackson is attempting to attest that she performed all of the duties performed by Givens and Pigg in their ZBM positions, as it is obvious from her affidavit that Jackson performed no sales or operational duties. (Doc. # 52 at 25–27).

### 4. Conclusory assertions

**a. and b.** In this section, defendant moves to strike Jackson's contention that she performed all of the duties performed by ZBM Givens and Pigg. For the reasons set out in Section 4(k)and(I) above, defendant's motion is well taken and the motions to strike are GRANTED.

### 5. *Best Evidence Rule.*

**a. Letter received by Plaintiff from Sara Lee is the best evidence of its Contents.**

**b. Plaintiff's applications are the best evidence as to whether she applied as an internal candidate.**

 Defendant moves to strike that portion of plaintiff affidavit wherein she attests that she received a certified letter from SL informing her that she had to return to work prior to the expiration of her disability leave because the actual letter is the best evidence of the content of the letter. (Doc. # 52 at 30–31). Defendant's motion to strike is GRANTED as the letter itself best evidences its content and tone.

 Defendant moves to strike that portion of plaintiff affidavit wherein she attests she did not apply as an internal candidate because the actual applications themselves are the best evidence whether or she did so. (*Id.* at 31–32). Defendant's motion is GRANTED IN PART and DENIED IN PART as follows. To the extent the applications contain repre-

sentations created by Jackson herself (e.g. her own answers to questions on the application and the content of the resume that she herself created and attached to it) the defendant's Motion to Strike is GRANTED. Conversely, to the extent that defendant contends that certain ikons or monikers placed on the applications by the computer program utilized by SL's recruiting office are the best evidence of whether Jackson used and internal or external website to apply for certain positions, defendant's Motion to Strike is DENIED.